

**SIGNED this 19th day of June, 2007.**

_____
**FRANK R. MONROE**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | X | CASE NO. 05-14415-FRM |
| SPILLMAN DEVELOPMENT | X | |
| GROUP, LTD. | X | CHAPTER 7 |

<u>MEMORANDUM OPINION</u>

On December 19, 2006, the Debtor filed its Motion to Determine Deficiency Claim held by

Fire Eagle, LLC ("Fire Eagle") and Objection to Claim in connection with the debt  purchased by

Fire Eagle from American Bank of Texas ("American Bank").  On January 12, 2007, a Joinder of

Spillman Investment Group, Ltd., Palisades Developers, Ltd., Donald C. Walden, Stephen W.

Gurasich, Jr., Robert H. West and Richard Topfer ("SIG, et al" ) to Debtor's Motion to Determine

Deficiency Claim Held by Fire Eagle, LLC, and Objection to Claim was filed.  In the joinder, SIG,

et al, also requested that the Court determine the deficiency, if any, remaining on the promissory

notes with respect to certain guarantors of the debt purchased by Fire Eagle from American Bank.

1

Seven individuals executed limited guarantees with respect to the American Bank debt. However, only four individuals have requested that this Court determine if any deficiency remains with respect to their guarantees, Donald C. Walden, Stephen W. Gurasich, Jr., Robert H. West and Richard Topfer ("Guarantors"). This ruling, therefore, only relates to these Guarantors and SIG as the Court clearly does not have jurisdiction over anyone who is not a party to this contested matter.

Fire Eagle filed its Motion to Dismiss for Want of Jurisdiction and to Invoke Bankruptcy Rule 7001 and 7016 ("Motion to Dismiss") and subsequently filed its Memorandum In Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction Over Non-Debtor Guarantors claiming this Court did not have jurisdiction over its dispute with the third party guarantors.

The Court held a hearing on the Motion to Determine Deficiency Claim and Objection to Claim and the Motion to Dismiss on February 12, 2007 after which the Court invited the parties to submit additional briefing on whether the Court had subject matter jurisdiction over the dispute between Fire Eagle and SIG, et al, to determine the amount of deficiency, if any, owing under the notes purchased by Fire Eagle from American Bank. Fire Eagle then filed its Supplemental Motion to Dismiss for Want of Subject Matter Jurisdiction Over Non-Debtor Parties and for Abstention and its Supplemental Memorandum in Support and SIG, et al, filed its Post-Hearing Brief in Support of the Court's Subject Matter Jurisdiction Over Non-Debtor Parties.

The Court has jurisdiction to determine if it has jurisdiction to adjudicate Fire Eagle's claim against the independent third party non-debtor Guarantors and SIG and enter a final order thereon. And, if the Court finds it does have jurisdiction, then it may enter a final order on the merits of the dispute under 28 U.S.C. §1334(a),(b) and (d), 28 U.S.C. §157(a) and (b)(1),(b)(3) and (c)(1), 28 U.S.C. §151 and the Standing Order of Reference from the United States District Court for the

2

Western District of Texas.

Findings of Fact

How We Got Here

The Debtor initially filed for relief under Chapter 11 of the Bankruptcy Code on August 5, 2005. Prior to the filing, American Bank loaned money to the Debtor secured by liens on substantially all of the Debtor's assets. This loan was evidenced by promissory notes which when combined had a balance due of $8,111,926.44 on the date of filing of the Debtor's petition. American Bank assigned the notes, security agreements and the deeds of trust related thereto to Fire Eagle pursuant to a purchase agreement effective October 6, 2006 (more than a year after Debtor's bankruptcy filing). Fire Eagle filed a notice of transfer as well as a proof of claim on October 17, 2006 (Claim No. 22) with respect to the pre-petition debt in the amount of $8,111,926.44. Under the "Assignment Agreement/Senior Loan Documents" American Bank assigned the full indebtedness, which at the time included principal, accrued interest and legal fees of $9,123,618.65 to Fire Eagle (the "First Lien Debt"). The accrued interest included in such amount of approximately $884,000 was calculated at the non-default rate as specified in the promissory notes. Fire Eagle acknowledged this non-default rate interest in its proof of claim.

Several limited guarantees were executed in connection with the First Lien Debt and likewise assigned to Fire Eagle. And, a related entity of the Debtor, Spillman Investment Group, Ltd. ("SIG"), pledged a certificate of deposit ("CD") in the amount of $1,200,000.00 to American Bank to secure payment of the First Lien Debt. It was also assigned to Fire Eagle and is the subject of a related interpleader action in state court, being *American Bank of Texas v. Spillman Investment Group, Ltd., and Fire Eagle, L.L.C.,* Cause No. D-1-GN-06-003885, in the District Court, 201st

3

Judicial District, Travis County, Texas.

The Debtor owned[1] and operated a golf course. The Court valued the golf course at approximately $6,900,000.00 for Chapter 11 plan purposes. After attempts to confirm the Debtor's and Fire Eagle's plans failed, it became abundantly clear that there were only two groups with the motivation to pay more than the true market value of the golf course; Fire Eagle on the one hand and the Guarantors of the First Lien Debt and SIG on the other.[2] SIG owned property next to the golf course on which a high end hotel was being planned which in all likelihood would increase the value of the course over time. And, the Guarantors were interested in extinguishing their guarantees by purchasing the golf course at an amount close to or equal to the First Lien Debt. Fire Eagle was incentivized by wanting to protect its 2nd lien debt of $4,100,000.00 as reflected in its proof of claim filed December 2, 2005 (Claim 14), but then amended on August 23, 2006 to $3,794,191.77 (Claim 21).

So, the Court, in this unusual situation, elected to enter an order allowing these parties to bid on the property. On November 30, 2006, at the auction held in the courtroom and on the record, Fire Eagle purchased the golf course by credit bidding $9,300.000.00 under 11 U.S.C. §363(k). This amount exceeded the market value previously placed on the property and exceeded the amount of the First Lien Debt. Pursuant to the "Agreed Order Approving Sale of Assets" entered by this Court on December 7, 2006 the $9,300,000.00 was to be applied against the indebtedness owed to Fire

[1]Actually the Debtor had procured a 99 year lease on which to build and operate the course.

[2]Some, not all, of the Guarantors and SIG had formed a new entity (Falcon Golf Club Partners) which would own and operate the course if successful in the bidding process.

4

Eagle.[3]

The Dispute

A dispute has arisen concerning the remaining deficiency amount, if any, owed on the First

Lien Debt. The Debtor and SIG, et al, claim that based on the calculations contained in the transfer

documents from American Bank to Fire Eagle, and given a prior payment of $500,000 from cash

collateral to Fire Eagle and the $9,300,000.00 credit bid, the First Lien Debt and any guarantor

liability has been satisfied.

Fire Eagle asserts that there is a deficiency owed for which the Guarantors are liable and to

which the CD may be applied at least with respect to state law. Fire Eagle's calculation includes

a retroactive application of a default interest rate (18%) on the principal amounts owed under the

First Lien Debt from August 1, 2005 forward. Further, Fire Eagle seeks additional attorneys' fees

it believes can be collected under the promissory notes and also argues a different allocation of its

credit bid with respect to the First Lien Debt and other debt it holds.

The Court's Jurisdictional Determination

The Court entered an Interim Order on Debtor's Motion to Determine Deficiency Claim Held

by Fire Eagle, LLC and Objection to Claim on May 21, 2007 wherein the Court determined that Fire

Eagle has no deficiency claim against the Debtor's estate under the First Lien Debt as Fire Eagle

credit bid the full amount due under the First Lien Debt plus an additional $538,437.05 in order to

buy the property securing the First Lien Debt pursuant to 11 U.S.C. §363(k). In reaching its

decision, the Court determined that when a creditor holds more than one secured debt upon property

---

[3]The Agreed Order Approving Sale actually authorizes the sale to Fire Phoenix, LLC which is a related entity of Fire Eagle formed to hold the golf course investment

5

of the estate being sold and is the successful bidder using the benefit of a credit bid under §363(k), the "credit bid" should be applied to the secured debts in order of their priority; i.e. first to the first lien, next the second and so on until the amount of the credit bid has been fully used. On that basis, the Court ruled that, the debt represented by the First Lien Debt had been fully extinguished by Fire Eagle's credit bid.

### Issues Presented

1. Does the bankruptcy court have subject matter jurisdiction to determine the liability of the Guarantors and the collateral pledged by SIG for the First Lien Debt?

2. Assuming the Court has jurisdiction, is there a deficiency claim Fire Eagle can enforce against the Guarantors and the collateral pledged by SIG for the First Lien Debt?

### Conclusions of Law

Federal courts are courts of limited jurisdiction, and bankruptcy courts are no exception. Their jurisdiction is "wholly 'grounded in and limited by statute.' "*See Bass v. Denney (In re Bass),* 171 F.3d 1016, 1022 (5th Cir. 1999)(quoting *Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995)). However, Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected to the bankruptcy estate. *Celotex Corp.* 514 at 307. The bankruptcy court's jurisdiction is divided into "core" and "non-core" proceedings. Core proceedings arise under title 11 or arise in a case under title 11. See, 28 U.S.C. §157(b). Non-core proceedings are those proceedings that are otherwise related to a case under title 11. See, 28 U.S.C. §157(c)(1). Bankruptcy judges may enter all appropriate orders and judgments in core proceedings, but unless the parties consent to core treatment, a bankruptcy judge must submit proposed findings of fact and conclusions of law in non-

6

core proceedings to the district court. *EOP-Colonade of Dallas Limited Partnership v. Faulkner (In re Stonebridge Technologies, Inc.)*, 430 F.3d 260 (5th Cir. 2005). See, 28 U.S.C. §157(b) and (c).

To determine whether a particular matter falls within general bankruptcy jurisdiction, one must determine whether the outcome of that proceeding could have any conceivable effect on the estate being administered in bankruptcy. *Wood v. Wood (In re Wood),* 825 F.2d 90, 93 (5th Cir. 1987). More specifically, an action is related to bankruptcy if "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re Majestic Energy Corp.,* 835 F.2d 87, 90 (5th Cir. 1988)(quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)).

Fire Eagle claims that the dispute between SIG, et al, and itself concerning the amount, if any, of the deficiency that can be enforced against the Guarantors and SIG's collateral after the sale is not a "related to" proceeding as bankruptcy courts "have no jurisdiction over proceedings that have no effect on the debtor.". *Celotex Corp. v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed. 2d 403 (1995) FN6. Fire Eagle also claims that *In re Five Boroughs Mortgage Co.,* 176 B.R. 708 (Bankr. E.D.N.Y. 1995) and *In re Home and Hearth Piano Parkway, L.P.,* 320 B.R. 596 (Bankr. N.D. Tex. 2004) are compelling authority supporting its position that a claim for bankruptcy purposes is different from the debt owed under state law. The Court disagrees with the applicability of those cases to the one at bar. In *Five Boroughs* and *Home and Hearth* the automatic stay had been lifted to allow the mortgagees to proceed with their foreclosure rights under state law. The courts in both cases acknowledged that the amount of debt owed by the mortgagor/borrower to the mortgagee/lender pursuant to their contractual relationship could be different than the mortgagees' actual claim amounts allowed for bankruptcy purposes as a result of the application of substantive

7

state law governing the parties' respective rights and obligations when a foreclosure occurs under that state law.

Here, however, Fire Eagle elected to buy the property at a sale conducted by the Court pursuant to §363 of the Bankruptcy Code by using rights granted to it by §363(k) to credit bid its secured debts. Fire Eagle did not pursue the Motion for Relief from Stay it filed November 17, 2006 so that it could proceed with its foreclosure remedies under state law. Instead, it participated in a sale held in open Court on November 30, 2006 as ordered by this Court's Order Regarding Debtor's Motion to Modify Sales Procedures In Connection With the Proposed Sale of Certain of the Debtor's Assets, which Order, although entered November 30, 2006, memorialized the Court's ruling in open court on November 2, 2006 which set the guidelines for the bidding. This is a huge distinction. Had Fire Eagle pursued the lifting of the stay and foreclosed under state law, circumstances indeed would be different.

Further, *Five Boroughs* does not address "related to" jurisdiction in the context of guarantor relationships. And, Judge Houser in *Home and Hearth* with respect to the lender's claims against the guarantors determined that in that particular case (where the lender's loan is non-recourse), that "it is hard to see how the claims could be 'related to' the case, since the outcome of that dispute will have no effect on the remaining estate being administered in bankruptcy." *Home and Hearth* at 613. There is no detailed discussion as to why there would be no effect on the estate if the guarantors were liable on their guarantees.

More on point is a line of cases that have not only recognized, but have discussed why an action against guarantors of a debtor's obligation is "related to" the bankruptcy case so as to confer jurisdiction. *Dak Mfg. Corp. v. Coordinated Components Corp. (In re Dak Mfg. Corp.),* 73 B.R.

8

917 (Bankr. D.N.J. 1987); *Equimark Commericial Fin. Co. v. Novachich (In re Showcase Natural Casing Co.),* 54 B.R. 142 (Bankr. S.D. Ohio 1985); *Mimbres Valley Bank v. Greeman (In re Greeman Motors, Inc.),* 22 B.R. 1 (Bankr. D.N.M. 1982). So, it is not surprising that a lawsuit seeking to enjoin suits by creditors of the debtor against guarantors is "related" because enforcing a judgment against a guarantor "'could conceivably' affect the administration of debtor's plan." *American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc. ),* 885 F.2d 621, 624 (9th Cir. 1989)

In *In re Showcase Natural Casing Co.*, the defendants (guarantors) filed a motion to dismiss on the grounds that the bankruptcy court was without jurisdiction over the matter. In ruling that "related to"jurisdiction did exist, the court pointed out that if there was a holding of liability against the defendants on their guaranty, the plaintiff's claim against the debtor would be reduced.

An action is related to bankruptcy if "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re Majestic Energy Corp.,* 835 F.2d at 90 (emphasis added). See also, *Copelin v. Spirco, Inc.,* 182 F.3d 174 (3rd Cir. 1999) "[T]he key word is 'conceivable.' Certainty or even likelihood [of effect on the estate being administered in bankruptcy] is not a requirement." (Internal quotation marks and citation omitted; alteration in original)); *In re Titan Entergy,* 837 F.2d 325, 330 (8th Cir. 1998)("[E]ven a proceeding which portends a mere contingent to tangential effect on a debtor's estate meets the broad jurisdictional test [for 'related to' jurisdiction].");  1 Lawrence P. King, Collier on Bankruptcy ¶3.01 [4][c] at 3-26 (15th ed. 1998)("'[A]utomatic' liability of the estate is not the sine qua non for related to jurisdiction; all that is necessary is that there could 'conceivably' be some effect upon the estate as a consequence

9

of the litigation in question.") See also, *Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Connecticut, (In re Dow Corning Corporation),* 86 F.3d 482, 491 (6th Cir. 1996).

SIG, et al, argue that if Fire Eagle is successful and the Guarantors do owe additional funds on their guarantees, then the Guarantors would have subrogation claims under 11 U.S.C. §509 against the Debtor which could in turn have a conceivable effect on the Debtor's bankruptcy estate. Fire Eagle counters that the rights of a co-debtor to a subrogation claim under §509 are limited as §509(b) limits the subrogation claim of the guarantor who pays to the amount of the claim of the primary creditor which was allowed under §502. Therefore, Fire Eagle asserts that even if a state court proceeding resulted in there being a deficiency judgment against the Guarantors, the §509 subrogation claims could not exceed the allowed claim of Fire Eagle in the bankruptcy on its First Lien Debt; and since this Court has ruled that it was fully satisfied by its credit bid, there is no remaining deficiency for bankruptcy purposes. Further, Fire Eagle asserts that the Guarantors' inequitable conduct throughout the bankruptcy would further preclude subrogation.

Any suggestion that possible claims of the Guarantors under §509 might be limited by the provisions of 11 U.S.C. §502 or might be disallowed under equitable principles would, of necessity, involve additional litigation in this Court and could conceivably have an effect-positively or negatively-on the estate. Further, assuming that Fire Eagle should successfully collect any deficiency from the Guarantors or SIG's collateral, and even assuming that the Guarantors' claims could not be subrogated, the total amounts due on claims against the bankruptcy estate would be decreased as Fire Eagle would be in a position where it has been paid in full on its First Lien Debt for bankruptcy purposes, and any money it received from the Guarantors or SIG's collateral would have to be applied against other debt owed to Fire Eagle by the Debtor; otherwise a windfall to Fire Eagle

10

would result.  This decrease would inure to the benefit of all other unsecured creditors, each of whom would then share in the disbursement that would otherwise have been paid to Fire Eagle. *Randall & Blake, Inc. v. Evans (In re Canion).* 196 F.3d 579, 586 (5th Cir. 1999)( Claims between two non-debtors that will potentially reduce the bankruptcy estate's liabilities produces an affect on the estate sufficient to confer "related to" jurisdiction).

Fire Eagle has also suggested that the determination of the deficiency, if any, owed by the Guarantors or enforced against SIG's collateral can have no effect on the administration of the estate because there is no estate, all assets of the Debtor having been sold by order of the Court.  However, Fire Eagle's Motion to Convert the case to a Chapter 7 proceeding confirms that Fire Eagle itself does not believe this argument, as Fire Eagle has consistently argued to the Court that the estate owns valuable Chapter 5 causes of action primarily against insiders; some of the same people/entities that guaranteed and further collateralized the First Lien Debt when it was owed to American Bank.

This Court has at a minimum "related to" jurisdiction over the dispute between Fire Eagle and SIG, et al, concerning the amount, if any, of the deficiency owed by the Guarantors or collectible against SIG's collateral after the sale of Debtor's assets for a §363(k) credit bid of $9,300,000.00. The amount of any such deficiency will conceivably affect the administration of the bankruptcy estate by affecting the amount of Fire Eagle's claim in this case, thereby affecting the percentage distributions to other creditors in the case, and this will be true whether the Guarantors are able to file their own subrogation claims against the estate pursuant to §509 or are equitably subordinated pursuant to §510.

Judicial economy and principles of equity weigh against allowing a state court to determine the Guarantors' liability if this Court has "related  to" jurisdiction.  See, *Plessey Precision Metals,*

11

*Inc. v. The Metal Center, Inc., (In re The Metal Center, Inc.),* 31 B.R. 458 (Bankr. Conn. 1983);

*Aetna Casualty & Surety Co., v. Dauria, (Matter of Pine Associates),* 40 B.R. 683 (Bankr. Conn.

1984). There is a possibility of inconsistent results if the determination of guarantor liability is not

determined by the bankruptcy court but instead by a state court. Fire Eagle has consistently argued

that the Court's valuation of the Debtor's real estate for plan purposes of $6,900,000.00 is somehow

determinative of how much of its credit bid is to be applied to the First Lien Debt and how much

is to be applied or allocated to its other debt. Such argument is specious. As a matter of law the

Court's determination of a value of $6,900,000.00 for the golf course related solely to the Debtor and

Fire Eagle's Chapter 11 plans and is binding for no other purpose. See, 11 U.S.C. §506(a)(1). *In re

Cason,* 190 B.R. 917, 925 (Bankr. N.D. Ala. 1995)( There can be several valuations in the course

of a case. "Nothing in §506 mandates that the value of collateral be fixed in a single valuation for

ALL purposes." (emphasis in original); *Fairchild v. Lebanon Production Credit Association,

(Matter of Fairchild)* 31 B.R. 789, 795 (Bankr. S.D. Ohio 1983) ("A determination of the amount

of a secured claim in one aspect of a bankruptcy proceeding is not necessarily *res judicata* in other

aspects of a proceeding.") This Court has already determined in the Interim Order Regarding

Debtor's Motion to Determine Deficiency Claim Held by Fire Eagle, LLC and Objection to Claim

entered May 21, 2007 that the First Lien Debt has been paid in full and that the non-default interest

rate is applicable.

Having decided that the competing claims of Fire Eagle's and the Guarantors as to the

existence of a deficiency are within the general bankruptcy "related to" jurisdiction, this Court must

also decide whether the claims qualify as "core" claims. A proceeding is core "if it invokes a

substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in

the context of a bankruptcy case." *Wood*, 825 F.2d at 97. Claims between third parties are typically considered within the bankruptcy court's non-core jurisdiction. But see*, EOP-Colonade of Dallas Limited Partnership v. Faulkner (In re Stonebridge Technologies, Inc.)*, 430 F.3d 260 (5th Cir. 2005).

In *Colonade*, the trustee of the liquidating trust brought an adversary proceeding, as lessee, against EOP-Colonade, the lessor, in connection with EOP's draw on a letter of credit that was provided as security for the debtor's commercial lease obligations with EOP. The trustee asserted that EOP breached the lease agreement and also made negligent representations to the bank that issued the letter of credit (causes of action the trustee came to own per a previous settlement with the bank) by prematurely drawing on the letter of credit and retaining an amount in excess of the claim cap of 11 U.S.C. §502(b)(6).

The 5th Circuit raised *sua sponte* the matter of jurisdiction as it appeared questionable with respect to the two negligent representation claims assigned to the trustee by the bank. The Court determined that assignment alone could not create bankruptcy jurisdiction to litigate a third party's cause of action. However, additional effects on the estate were evident: a claim by the bank against EOP affects the need for the bank to seek reimbursement from debtor's bankruptcy estate. EOP's draw on the letter of credit triggered the debtor's contractual responsibility to reimburse the bank for the draw on the letter of credit. These affects were sufficient to confer general bankruptcy jurisdiction. However, the 5th Circuit also determined that the negligent representation claims were within the bankruptcy court's core jurisdiction because the third party negligent representation claims were dependent upon the interpretation of rights created in bankruptcy, specifically rights associated with §502(b)(6) and §365(a). Because the resolution of those claims were dependent upon the rights created by the bankruptcy laws and could not exist but for the filing of the debtor's bankruptcy, the

matter was core and the bankruptcy court had the jurisdiction to enter a final order thereon.

Similar to *Colonade*, Fire Eagle's claims against the Guarantors and SIG's collateral and the Guarantors and SIG's defenses thereto are dependent upon the interpretation of rights created in bankruptcy and used by Fire Eagle to acquire the Debtor's property, specifically those rights contained in §363(k). Fire Eagle's claims and the Guarantors and SIG's defenses thereto are substantively related to the proper interpretation and application of §363(k). Because these competing claims are dependent upon rights created by the bankruptcy laws and could not exist but for the filing of the Debtor's bankruptcy, [i.e. the Court ordered sale of the Debtor's property pursuant to §363 and Fire Eagle's use of §363(k)], they are within this Court's core jurisdiction.

<u>Deficiency Claims Against the Guarantors</u>

Bankruptcy courts may enter all appropriate orders and judgments in core proceedings. In the Interim Order of May 21, 2007, the Court determined that Fire Eagle has no deficiency claim against the Debtor's estate with respect to the First Lien Debt as Fire Eagle credit bid the full amount of the First Lien Debt plus an additional $538,437.05 in order to buy the property securing the First Lien Debt pursuant to 11 U.S.C. §363(k). Having concluded that the First Lien Debt was extinguished by Fire Eagle's $9,300,000.00 §363(k) credit bid, the First Lien Debt no longer exists. The Guarantors, therefore, can have no liability to Fire Eagle on their guarantees of the First Lien Debt. The debt that was guaranteed is gone being fully paid by Fire Eagle's §363(k) bid. Further, the additional collateral for such debt pledged by SIG should be released for the same reason.

To the extent this matter is determined by any appellate court to be only a "related to" matter, this Order shall constitute proposed findings of fact and conclusions of law to the District Court.

Orders of even date herewith will be entered.

###